UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Ahmed Ibrahim,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 17 C 6213 |
| v. | ) |
| | ) Magistrate Judge Daniel G. Martin |
| **The University of Chicago,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

For the reasons set forth in the Statement below, Plaintiff Ahmed Ibrahim's motion to compel responses to plaintiff's first set of document requests [27] is granted in part and denied in part.

## STATEMENT

### I. Background

This is an employment discrimination case. Plaintiff Ahmed Ibrahim alleges that he was a Lead Researcher in defendant the University of Chicago's STEM Department from July 1, 2016 until September 27, 2016. Ibrahim claims that the University discriminated against him on the basis of his national origin (Egyptian), his sex (male), and his religion (Muslim) by subjecting him to unequal terms and conditions of employment and terminating him. The University's position is that it terminated Ibrahim because of his poor job performance. Specifically, the University states that during plaintiff's probationary period, he failed to communicate effectively with his colleagues; had serious difficulties with time management, prioritization, and taking direction; his work product was often of insufficient quality or reflected poor judgment for an employee of his level; and his performance failed to improve despite contemporaneous feedback from his supervisor and senior researchers whose work he supported.

In his motion to compel, Ibrahim seeks an order compelling defendant to fully respond to his Document Request No. 9. In Document Request No. 9, Ibrahim seeks the personnel files of all employees supervised by Jeanne Century (his former supervisor) during June 1, 2016 to present. Ibrahim argues that these documents are relevant to his claims because they could lead to the identification of similarly situated employees. The University objected to Document Request No. 9 as overly broad, unduly burdensome, and as seeking information that is not relevant to any issue in the proceeding or calculated to lead to the discovery of relevant information to any issue in this proceeding. The University withheld all responsive, non-privileged documents on the basis of these objections.

### II. Motion to Compel

Ibrahim argues that the University should produce the personnel files of 11 current and former employees in his former unit, arguing that such documents are relevant to determining if any of the individuals are similarly situated to him, and the file of Dr. Century, his former

supervisor who made the termination decision. Ibrahim explains that the 11 current and former employees in the unit are all female, all non-Egyptian, all have overlapping job duties with him, all report or reported to Dr. Century, and either worked at the same time as him or were his replacements. Federal Rule of Civil Procedure allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1). "Magistrate judges and district courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Service, Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009). In determining whether personnel files are discoverable, the court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truth-seeking function" in the particular case before the court." *Id.* (*quoting Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

The University maintains that the personnel files of the 11 current and former employees in his former unit are not relevant because Ibrahim is not similarly situated to these coworkers. In the employment context, "circumstantial evidence of discrimination may include 'evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (*quoting Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 530 n.4 (7th Cir. 2008)). "The purpose of the inquiry 'is to eliminate other possible explanatory variable, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Id.* (*quoting Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). In a case involving the quality of job performance, a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct to those who were treated less harshly. *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 463 (7th Cir. 2014) (stating a "similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects."). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp*, 219 F.3d 612, 617-18 (7th Cir. 2000), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

As to the second element of the similarly situated analysis, that the employees were subject to the same standards, the University argues that Ibrahim cannot show that the other 11 employees were subject to the same standards as Ibrahim because he was terminated during his six-month probationary period and the other 11 employees were "regular" employees. The Seventh Circuit has held that the difference between probationary and non-probationary employees can eliminate the possibility that a comparator is similarly situated if the employment status accounts for the difference in treatment. *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 688-89 (7th Cir. 2007) (holding that employment classifications of hourly and appointed employees were not relevant to the similarly situated inquiry because the classifications did not influence the employer's treatment of its employees); *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004) (holding two employees "were not similarly situated because [plaintiff] was still on probation while [the proposed comparator] was not."); *see also Brummett v. Sinclair Broadcast Grp, Inc.*, 414 F.3d 686, 694 (7th Cir. 2005). The University maintains that Ibrahim was terminated for poor performance, and it has made a showing that probationary employees are judged according to different performance oversight standards. Pursuant to the University's Probationary Period Policy effective June 10, 2013, employees in their probationary period are monitored more closely than their colleagues who

2

have completed their probationary period of employment. (Doc. 35 at 10, Exh. 1) (stating "[y]our performance will be closely evaluated by your supervisor to ensure that you understand and are able to meet the performance expectations."). Given the different performance oversight standards, regular employees are not proper comparators for Ibrahim because Ibrahim was still in his probationary period when he was terminated for poor performance. Since Ibrahim is not similarly situated to regular employees who reported to Jeanne Century and had similar performance issues outside of his or her probationary period of employment, the personnel files of these employees are not relevant and are not discoverable.

Regarding the third element of the similarly situated analysis, that the other employees engaged in similar conduct, the University contends that the comparator pool is limited to employees who reported to Jeanne Century and who, during his or her probationary period of employment, failed to communicate effectively with his/her colleagues; had serious difficulties with time management, prioritization, and taking direction; and whose work product was often of insufficient quality or reflected poor judgment for an employee of his/her level for the time period of June 1, 2016 to the present.[1] As for the conduct at issue, Ibrahim argues that he needs discovery to determine what behavior is similar to "failure to communicate effectively with colleagues," "serious difficulties with time management, prioritization and taking direction," and "poor work product." The Court agrees with Ibrahim.

Limiting Ibrahim's potential comparators to probationary employees who had the exact same performance problems as Ibrahim, as the University advocates, improperly restricts the scope of discovery. "[T]he law is not this narrow; the other employees must have engaged in similar—not identical—conduct to qualify as similarly situated." *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005). *Peirick*, 510 F.3d at 689 (stating "[o]f course, employees may be similarly situated to the plaintiff even if they have not engaged in conduct identical to that of the plaintiff."). The "similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010) *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (holding the similarly situated inquiry does not require "near one-to-one mapping between employees—distinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions."). Rather, the employees receiving more lenient treatment must share "a comparable set of failings." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003).

Thus, the University takes too narrow a view of relevance. Ibrahim need only show that other employees supervised by Century had similar performance problems during their probationary period. Ibrahim's document request seeks to identify proper comparators and need not be limited to mirror-image employees. Accordingly, the Court finds that the personnel files of employees who reported to Jeanne Century and who, during his or her probationary period of employment, had performance problems are relevant to Ibrahim's employment discrimination claim and proportional to the needs of the case. These personnel files will help Ibrahim determine if he is similarly situated with respect to performance, qualifications, and conduct and specifically, whether the performance deficiencies of other employees during their probationary period are substantially similar to those attributed to him by the University. To the extent the University believes that the performance issues of other employees during their probationary period of employment are not sufficiently similar to Ibrahim's conduct, this argument is better raised at summary judgment or at trial.

---

[1] At the motion hearing on April 17, 2018, defense counsel stated that there are zero employees who fit the University's proposed comparator pool.

3

The University relies upon *Gehring v Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) and *Balderson v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) to support its argument that Ibrahim must show that the 11 current and former employees are similarly situated before he can obtain the personnel files. The Court disagrees with the University's argument that to obtain discovery, Ibrahim must first demonstrate that he is similarly situated. Demanding that Ibrahim show that identified coworkers are in fact similarly situated before he can obtain discovery of personnel files ignores the purpose of discovery—to obtain evidence to support a claim. *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 753 (6th Cir. 2012) (noting "[t]he refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine."). *Vuona v. Merrill Lynch & Co., Inc.,* 2011 WL 5553709, at *4 (S.D.N.Y. Nov. 15, 2011) (stating "[t]he purpose of discovery here is, in part, to help identify the universe of proper comparators."). Ibrahim has sufficiently alleged that the other employees are potentially similarly situated because they are all female, all non-Egyptian, all have overlapping job duties with Ibrahim, all reported to Dr. Century, all had performance problems during their probationary period of employment, and either worked at the same time as Ibrahim or were his replacements. Given the broad relevancy standard of discovery, these employees are similar enough to permit discovery of their personnel files because the information sought could reveal that these employees are in fact sufficiently similar to Ibrahim.

The *Gehring* and *Balderston* opinions do not compel a different result here. In *Gehring*, the district court concluded, after conducting an *in camera* review of the requested personnel files of the other employees, that the "other employees' circumstances were not close enough to Gehring's to make comparisons productive," turning over the personnel files would invade the privacy of other employees, and the judge feared that the plaintiff wanted to use the evidence not for purposes of comparison but in order to put the defendant's personnel practices on trial. *Gehring*, 43 F.3d at 342. The Seventh Circuit held that the district court did not abuse its discretion in prohibiting plaintiff's discovery of the personnel files on those grounds. *Id.* In contrast, this Court has not reviewed the personnel files and has not made any findings regarding whether the other employees' circumstances are close enough to make comparisons productive. Ibrahim seeks the other employees' personnel files to determine whether the identified coworkers are in fact sufficiently similar to Ibrahim with respect to performance, qualifications, and conduct, and there is no suggestion that Ibrahim seeks the personnel files for any purpose other than comparison. Finally, the Agreed Confidentiality Order entered in this case sufficiently addresses the other employees' privacy interests. (Doc. 20).

*Balderston* involved allegations of company-wide discrimination. The plaintiffs sought "discovery of extensive statistical data to show a pattern or practice of discrimination." *Balderston*, 328 F.3d at 319. The Seventh Circuit cautioned that "statistics must look at the same party of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications and conduct; the plaintiff and the other similarly situated employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same RIF as when the plaintiff was discharged." *Id.* at 320. The Seventh Circuit affirmed the district court's denial of the plaintiffs' motion to compel statistical evidence on a nationwide basis, holding that the district court's decision to limit discovery "to the relevant corporate department, similarly situated employees, time period and decisionmakers" was not an abuse of discretion." *Id.* Consistent with *Balderston*, Ibrahim has limited his discovery request to the relevant department, potentially similarly situated employees, time period, and decisionmaker. Ibrahim's request for personnel files is also far from a nationwide request. Ibrahim seeks a small number of personnel files.

There are no more than 11 employees included in the group of employees who reported to Jeanne Century and who, during his or her probationary period of employment, had performance problems.

Lastly, Ibrahim seeks to compel production of the personnel file of Jeanne Century (Ibrahim's former supervisor who made the termination decision). The problem for Ibrahim is that he never sought Dr. Century's personnel file in his discovery requests. While Ibrahim may be entitled to discover the personnel file of the decisionmaker involved in his termination, *Digan v. Euro-Am. Brands, LLC*, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012), "the Court will not enforce a motion to compel where the party seeking discovery never requested the information from the opposing party." *McCowan v. Educ. Servs. of Am.*, 2009 WL 3055313, at *4 (N.D. Ind. Sept. 21, 2009); *see also* Fed. R. Civ. P. 37(a)(3)(B)(iv) (permitting a motion to compel if the non-movant has failed to comply with a request for production made pursuant to Rule 34). Plaintiff's motion to compel the personnel file of Dr. Century is therefore denied as premature.

For the reasons set forth above, Ibrahim's motion to compel responses to his first set of document requests is granted in part and denied in part. The University shall comply with this Order by May 14, 2018.

Date: May 7, 2018

_Daniel G. Martin_
Daniel G. Martin
United States Magistrate Judge